IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

FILED
OCT - 7 2020
CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 20-30066 |
| v. | ) |
| | ) Violations: Title 18, United |
| TARNAVIS LEE and | ) States Code, Sections 1341, |
| DEMETRA JACKSON, | ) 1343, 1956(a)(1)(A)(i), and |
| | ) 2 |
| Defendants. | ) |

## INDICTMENT

THE GRAND JURY CHARGES:

## COUNTS 1 - 17
(Mail and Wire Fraud)

At times material to this indictment:

### The Illinois Department of Human Services

1. The Illinois Department of Human Services (DHS) was an agency of the State of Illinois charged with, among other things, providing Illinois residents transitioning from educational programs or welfare to work and economic independence with a variety of community-based services, including affordable child care.

2. The Child Care Assistance Program (CCAP) was a DHS program designed to provide low-income families with affordable child care. The CCAP required eligible families to pay a portion of the cost of child care on a sliding scale according to family size, income, and the number of children in care. Through CCAP, the State of Illinois paid the remaining cost of child care services.

3. The funding for the CCAP was comprised mostly of a mixture of General Revenue Funds from the State of Illinois and from the Temporary Assistance for Needy Families (TANF) and the Child Care Development Fund block grants from the United States Department of Health and Human Services. For the fiscal years 2010 (July 1, 2009 through June 30, 2010) through 2019 (July 1, 2018 through June 30, 2019), the CCAP was funded with a combination of funds from the State of Illinois of approximately 51% and funds from the United States Department of Health and Human Services of approximately 49%.

4. Illinois Action for Children (IAC), formerly known as the Day Care Action Council of Illinois, was a child care resource and

referral agency, located in Cook County, Illinois, that was contracted by DHS to oversee and administer the CCAP for residents of Cook County.

5. Pursuant to CCAP guidelines, eligibility for assistance for child care services was determined based on certain factors, including family size, income of applicants, and number of children in the family. Each applicant residing in Cook County and requesting child care subsidy payments on behalf of his or her child(ren) was required to submit a DHS Child Care Application to IAC. The application required an applicant to provide information, including the applicant's work information, (i.e. his or her employer, hourly or yearly wage, work schedule) or information about the educational program, (i.e. the name of his or her school, description of purpose of program, class schedule), income information, the name of each child for whom the applicant was seeking child care payments, whether the need for child care was full-time or part-time, and family size. An applicant who was unemployed or not enrolled in a DHS approved educational program was not typically eligible to receive child care assistance.

6. The initial DHS application and the Request for Redetermination form for continuing eligibility also required the

3

potential child care provider to submit "provider information," including the location where care would be provided, the date care did or would commence, and licensing information.

7.     Once IAC determined that the applicant was eligible for child care assistance, the applicant was entitled to receive CCAP subsidy payments as an approved client.

8.     Each client eligible for CCAP subsidy payments was typically required to make a co-payment for child care services directly to the child care provider. The child care provider, in turn, submitted a "Child Care Certificate" (CCC) to IAC seeking payment for the remaining value of the child care services provided to the client.

9.     Upon receipt of the CCC from the provider, IAC processed the form by entering data from the CCC into the Human Services Child Care Management System (HSCCMS) computer system maintained by DHS, and, if approved, caused a warrant (check) or Automated Clearing House (ACH), also known as direct deposit, payment to be issued from the Illinois State Comptroller to the provider for the payment of child care services.

10. Child care providers could also submit claims for the remaining value of the child care services by calling the DHS Integrated Voice Response (IVR) system and using their telephone to enter claim information into the HSCCMS maintained by DHS. Payments to the child care providers for approved child care claims were then made by the Illinois State Comptroller through the issuance of a warrant (check) or a direct deposit to a bank account of the child care provider.

### The Illinois State Comptroller

11. The Illinois State Comptroller maintained a bank account through JPMorgan Chase, NA for, among other things, making payments to child care providers under the CCAP program.

12. The Illinois State Comptroller computers that created the computer file that initiated the ACH (direct deposit) process were located in Springfield, Illinois.

13. The computers used by JPMorgan Chase, NA that processed the computer file created by the Illinois State Comptroller were at times located outside Illinois.

## The Defendants

14. Defendant **TARNAVIS LEE** resided in Chicago and Burbank, Illinois and, with her spouse, owned and operated Hills Transportation, Hill's Transportation, Hills Transportation Service, and Hill's Transportation Service (collectively HT). Defendant **LEE** also owned Lee's Toddler Town Inc., a licensed child care business located in Chicago, which provided full-time and part-time child care services.

15. Defendant **LEE**, individually and as the sole owner and officer of Lee's Toddler Town, participated in the CCAP as a licensed child care provider and submitted claims, and caused claims to be submitted, for child care services to IAC and DHS.

16. Defendant **DEMETRA JACKSON** resided in Chicago and was the owner and operator of Jitter Bugs, Inc., a licensed child care provider located in Chicago. Jitter Bugs also purported to provide full-time and part-time child care services. Defendant **JACKSON**, individually and as the sole owner of Jitter Bugs, participated in the CCAP as a licensed child care provider and submitted claims, or caused claims to be submitted, for child care services to IAC and DHS.

## The Scheme to Defraud and to Obtain Money and Property

17. Beginning in approximately March 2016 and continuing to approximately April 2019, the defendants,

**TARNAVIS LEE and DEMETRA JACKSON**,

knowingly devised and participated in a scheme to defraud the State of Illinois, the United States, and others and to obtain their money and property by means of false and fraudulent pretenses, representations, promises, and material omissions.

18. As part of the scheme, Defendants **LEE and JACKSON** fraudulently obtained CCAP subsidy payments from the State of Illinois by, among other things, submitting and causing the submission of false and fraudulent records and information to IAC and DHS containing materially false and fictitious information regarding: (a) CCAP applicants' eligibility to receive CCAP subsidy payments; and (b) the type of child care and the child care services actually provided by Defendant **JACKSON** and Jitter Bugs.

19. As part of the scheme, Defendant **LEE** provided the DHS Child Care Application and Request for Redetermination forms to existing and potential child care clients so that the clients could apply

7

for and be determined eligible to receive the CCAP subsidy payments and to maintain their continuing eligibility for such payments. Defendant **LEE** also completed or assisted parents in completing the application and redetermination forms.

20. As part of the scheme, Defendant **LEE** prepared and submitted to IAC and DHS materially false and fraudulent applications and redetermination forms on behalf of parents seeking approval for the parents as an eligible client. Both Defendants **LEE and JACKSON** knew that many of the applications and redetermination forms contained false information regarding a client's employment and income, the period of time a child would spend at Jitter Bugs, the number and names of children receiving child care services, and the actual location where child care services were to be provided.

21. As part of the scheme, Defendant **LEE**, with Defendant **JACKSON's** knowledge, knowingly submitted, and caused to be submitted, on behalf of Jitter Bugs, fraudulent CCC Reports to IAC and DHS, either in document form to IAC or in electronic form through the IVR directly to DHS, that falsely represented the names of children receiving child care services, the number of days attended, and whether

the children attended full or part-time, in order to receive CCAP payments to which Defendants **LEE and JACKSON** were not entitled. Defendant **LEE** also falsely certified, and caused others to falsely certify, that the information contained in the CCC Reports was complete and accurate.

22.  As part of the scheme, Defendants **LEE and JACKSON** caused the State of Illinois to issue CCAP subsidy payments to Jitter Bugs, either in the form of a mailed state warrant or check or electronically through direct deposit into a bank account over which Defendants **LEE and JACKSON** exercised control. Following receipt of the subsidy payments issued to Defendant **JACKSON** and Jitter Bugs, Defendants **LEE and JACKSON** caused more than one-half of the funds electronically deposited to be transferred to accounts over which only Defendant **LEE** exercised control.

23.  As part of the scheme, Defendant **LEE** repeatedly made kickback payments to parents that were purported clients of Jitter Bugs with funds from false claims for subsidy payments that were submitted to IAC and DHS. Between March 2016 and April 2019, Defendant **LEE**

made approximately 49 payments totaling approximately $35,000 to at least 1 parent.

24. As part of the scheme, Defendants **LEE and JACKSON** continued to submit, and caused to be submitted, claims for child care services purportedly provided by Defendant **JACKSON** and Jitter Bugs even after Defendant **JACKSON** moved away from her residence and the licensed address of Jitter Bugs where the child care services were purportedly provided.

25. As a result of their scheme, Defendants **LEE and JACKSON** caused a total of approximately $312,000 in claims to be submitted to IAC and DHS for purported child care services and a loss to the State of Illinois and the United States of approximately more than $140,000.

### Executions of the Scheme: Mail Fraud
### COUNTS 1 - 2

26. On or about the below-listed dates, and for each count, the defendants,

**TARNAVIS LEE and DEMETRA JACKSON,**

for the purpose of executing, and attempting to execute the scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, caused to be

delivered by the United States Postal Service, according to the directions thereon, mail matter consisting of a warrant or check representing the below-identified payments to Jitter Bugs for child care services not rendered, or not rendered to the extent claimed, as indicated below:

| COUNT | DATE | WARRANT NUMBER | AMOUNT |
| --- | --- | --- | --- |
| 1 | 4/1/16 | AB4889194 | $3,034.65 |
| 2 | 4/1/16 | AB4889195 | $2,890.00 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## Executions of the Scheme: Wire Fraud
## COUNTS 3 - 17

27. On or about the below-listed dates, and for each count, the defendants,

**TARNAVIS LEE and DEMETRA JACKSON,**

for the purpose of executing and attempting to execute the scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, sounds, and images, in that they submitted, or caused to be submitted, the below-identified payments to Defendant **JACKSON** and Jitter Bugs for child care services not rendered, or not rendered to the extent claimed, causing the Illinois State Comptroller, located in the Central District of Illinois, to transmit information to JPMorgan Chase, NA, whose servers were located outside the state of Illinois, the direct deposits listed below:

| Count | Date | Amount | Parent |
|---|---|---|---|
| 3 | 3/13/17 | $2,499.20 | JH |
| 4 | 4/14/17 | $2,874.38 | JH |

| | | | |
|---|---|---|---|
| 5  | 5/12/17 | $2,451.00 | JH |
| 6  | 6/13/17 | $2,696.30 | JH |
| 7  | 7/17/17 | $2,748.32 | LC |
| 8  | 7/17/17 | $2,696.30 | JH |
| 9  | 4/10/18 | $2,695.30 | JH |
| 10 | 4/11/18 | $1,998.08 | LC |
| 11 | 5/10/18 | $2,510.28 | JH |
| 12 | 5/10/18 | $1,902.94 | LC |
| 13 | 6/12/18 | $1,936.13 | LC |
| 14 | 6/19/18 | $2,629.96 | JH |
| 15 | 7/10/18 | $2,510.28 | JH |
| 16 | 7/12/18 | $2,480.65 | LC |
| 17 | 8/20/18 | $2,406.15 | LC |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 18 - 25
## (Money Laundering)

1.  Paragraphs 1 through 27 of Counts 1 through 17 are hereby re-alleged and incorporated by reference.

2.  On or about the dates listed below, for each count, the defendant,

### TARNAVIS LEE,

did knowingly conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, namely, mail and wire fraud, as charged in Counts 1 through 17 of this Indictment, with the intent to promote the carrying on of a specified unlawful activity, namely, mail and wire fraud, as charged in Counts 1 through 17 of this Indictment, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date     | Receiver | Amount     |
| ---   | ---      | ---      | ---        |
| 18    | 1/19/17  | JH       | $1,211.00  |
| 19    | 4/18/17  | JH       | 1,434.00   |
| 20    | 7/19/17  | JH       | 1,345.00   |
| 21    | 10/17/17 | JH       | $1,222.00  |

| 22 | 11/16/17 | JH | $1,344.00 |
| 23 | 2/16/18  | JH | $1,161.00 |
| 24 | 5/4/18   | JH | $1,155.00 |
| 25 | 7/12/18  | JH | $1,155.00 |

All in violation of Title 18 United States Code, Sections 1956(a)(1)(A)(i) and 2.

                                              A TRUE BILL

                                                        s/ Foreperson

                                              FOREPERSON

s/ Gregory M. Gilmore

JOHN C. MILHISER
UNITED STATES ATTORNEY/TB

15